142 Nev., Advance Opinion 47



FILED

Jul 02 2026
ELIZABETH A. BROWN
CLERK OF SUPREME COURT

# IN THE SUPREME COURT OF THE STATE OF NEVADA

|  |  |
|---|---|
| ANDREW CLARK, AN INDIVIDUAL; AND TRACY CLARK, AN INDIVIDUAL, Appellants, vs. NADIA MARIN, AN INDIVIDUAL, Respondent. | No. 86592 |

Appeal from a district court judgment on a jury verdict in a tort action and post-judgment orders denying a motion for a new trial, awarding expert and attorney fees, and assigning claims in execution of the judgment. Eighth Judicial District Court, Clark County; Monica Trujillo and Jacqueline M. Bluth, Judges.

*Affirmed in part, reversed in part, and remanded.*

Womble Bond Dickinson (US) LLP and Daniel F. Polsenberg and Kory J. Koerperich, Las Vegas; Emerson Law Group and Phillip R. Emerson, Henderson; The Cottle Law Firm and Matthew D. Minucci, Las Vegas, for Appellants.

Bailey Kennedy and Joshua P. Gilmore and Tayler D. Bingham, Las Vegas; Ladah Law Firm and Ramzy P. Ladah and Carl R. Houston, Las Vegas, for Respondent.

BEFORE THE SUPREME COURT, EN BANC.

*OPINION*

By the Court, STIGLICH, J.:

Nadia Marin sustained injuries in a car accident and sued Andrew Clark, the driver, for negligence and Tracy Clark, the car owner, for negligent entrustment. A jury found in Marin's favor on both claims and awarded damages. The district court denied the Clarks' motion for a new trial, awarded Marin expert and attorney fees, and assigned to Marin the Clarks' claims against their insurer in execution of the judgment.

We affirm the judgment and the district court orders denying the Clarks' motion for a new trial, granting expert fees, and granting assignment of the Clarks' claims to Marin. We reverse, however, the order granting attorney fees. In doing so, we overrule *Capriati Construction Corp. v. Yahyavi*, 137 Nev. 675, 498 P.3d 226 (2021), insofar as it held that contingency fees are incurred post-offer. Reflecting the intent of NRCP 68, we take this opportunity to make clear that the district court must determine the value of work performed post-offer, which may be informed by but is independent from the contingency fee, in deciding the amount of an attorney fee award under NRCP 68. Because the district court awarded the full contingency fee in this case, which was an unreasonable amount given the post-offer work completed, we reverse the district court order granting attorney fees and remand for reconsideration consistent with this opinion.

*FACTS AND PROCEDURAL HISTORY*

With permission from appellant Tracy Clark, appellant Andrew Clark, her son, borrowed her vehicle. He ran a red light and struck respondent Nadia Marin's vehicle as she was passing through the intersection. Marin sustained multiple injuries, for which she received

2

extensive medical treatment. Marin was diagnosed with chronic regional pain syndrome (CRPS), a neurological pain condition that persists despite physical healing, in her right hand. CRPS is diagnosed through process of elimination, implementing different treatment plans for alternative conditions until CRPS is the only remaining explanation for a patient's symptoms. Marin underwent several surgeries in the process of eliminating other conditions like carpal tunnel syndrome.

Marin sued the Clarks. Four years after filing suit and 24 days before trial, Marin served a $2 million offer of judgment under NRCP 68. When the Clarks did not respond, the offer expired, and the case proceeded to trial. Because the Clarks conceded liability, only the issue of damages was presented to the jury. Following a 13-day trial, the jury awarded Marin $2,045,117.55 in damages.

The Clarks moved for a new trial, alleging that Marin's counsel had falsified arguments and evidence to exaggerate Marin's medical conditions. Finding no evidence of misconduct, the district court denied the motion. Marin moved for expert fees under NRS 18.005(5) and for attorney fees under NRCP 68. The court granted both motions, awarding expert fees for five experts totaling $118,875 and attorney fees in the full amount of Marin's contingency fee agreement, totaling $818,047.02. Marin also moved to have the Clarks' claims against their insurance carriers assigned to her in execution of the judgment, which the court granted.

The Clarks now appeal the judgment, the order denying their motion for a new trial, the expert fee award, the attorney fee award, and the order assigning their claims in execution of the judgment.

*DISCUSSION*

The Clarks raise seven issues. With respect to the trial, the Clarks argue that the district court erred when it failed to allocate enough

3

trial days for the Clarks to present their case, allowed Marin to withdraw deemed admissions, and issued a jury instruction unsupported by the evidence. The Clarks appeal the district court's denial of their motion for a new trial on the grounds that the court erred in finding no attorney misconduct despite an alleged post-trial admission by Marin's counsel that he had presented false evidence of Marin's injury. With respect to the fees awards, the Clarks argue that the court failed to provide express findings to justify expert fees surpassing the statutory presumptive cap and that the attorney fee amount was unwarranted and unreasonable. Finally, the Clarks argue that their claims against their insurance carriers were not assignable because they were not ripe in light of the ongoing appeal. We address each issue in turn.

*The district court did not violate the Clarks' due process rights by allotting 13 days for trial*

The Clarks argue that the district court disregarded their scheduling concerns and failed to allocate enough time for trial, thereby violating their due process rights by preventing them from calling all of their experts and mounting a full defense. We disagree.

Parties are "not entitled, as a matter of right, to put on every witness [they] may have." *Virgin Valley Water Dist. v. Paradise Canyon, LLC*, 141 Nev., Adv. Op. 19, 567 P.3d 962, 975 (2025) (citation modified). The district court has wide discretion in conducting trials, including limiting the presentation of evidence. *Young v. Nev. Title Co.*, 103 Nev. 436, 441, 744 P.2d 902, 904-05 (1987); NRCP 16(c)(2)(M). These limitations do not violate due process rights so long as the parties are given "a meaningful opportunity to present their case." *Virgin Valley*, 141 Nev., Adv. Op. 19, 567 P.3d at 975 (citation modified). Considering the constitutional

4

ramifications, we review a court's limits on the presentation of evidence de novo. *Id.*

Here, based on the parties' initial agreed estimates, the district court scheduled 12 days for trial. Before trial began, the Clarks requested to continue the trial—for the 12th time—to a later calendar setting that could accommodate 15 trial days. Sensitive to the age of the case, the district court denied the continuance but extended several scheduled half days to full days, set aside another day for trial, and limited the time for voir dire to more quickly commence with the parties' presentations. The trial ultimately lasted 13 days, during which the parties collaborated to determine which party would call which witnesses on which days. Although the Clarks complained on multiple occasions about the time Marin was taking to present her case, they never requested additional trial days or moved the court to assign time between the parties. Marin presented 14 witnesses over 7 days, and the Clarks presented 4 witnesses over 3 days. During their case-in-chief, the Clarks called Andrew Clark and three experts to testify about Marin's injuries and medical treatment, attacking causation and the necessity of Marin's treatments. Notably, the jury was sent home early on one of the Clarks' trial days because they had no witnesses present to testify. The Clarks now challenge the district court's allocation of trial days, claiming they would have presented additional experts with more time.

On the record before us, we conclude that the Clarks had sufficient opportunity to present their theory of defense, especially considering only damages were at issue. The district court did not impose arbitrary time limitations without warning, dictate presentation time, or restrict the Clarks' presentation of evidence while granting Marin free

reign. *See Virgin Valley*, 141 Nev., Adv. Op. 19, 567 P.3d at 975-76 (finding a violation of due process where the district court began restricting only one party's time part way through trial, leaving only 9 hours for the party to present its case compared to the opposing party's 12 days). Rather, the court left it to the parties to split trial days, and the Clarks never objected to the collaborative scheduling. From the outset, the court was clear about scheduling expectations and adjusted its docket in response to timing concerns when raised by the parties. This was not an instance of the district court placing a thumb on the scale of one of the parties. Accordingly, on the record before us, we conclude that the Clarks received a meaningful opportunity to present their case.

We also note that the Clarks failed to proffer the testimony the additional witnesses would have offered. The Clarks reference "other potential defense witnesses, such [as] Drs. Baloh and Vahey, [who] would have provided jurors 'a complete picture of plaintiff's alleged medical conditions,'" but they do not indicate what that "complete picture" would have entailed. Marin's medical conditions and treatments were explained and dissected by the experts the Clarks did call. Additionally, both Dr. Baloh's and Dr. Vahey's treatment records were admitted into evidence. Without knowing what more the Clarks were unable to present due to the alleged time pressures, we conclude that the Clarks failed to demonstrate that their due process rights were violated.

*The district court did not abuse its discretion in permitting Marin to withdraw deemed admissions*

The Clarks argue that the district court erred in denying their motion for a directed verdict based on Marin's deemed admissions, because it abused its discretion in allowing Marin to withdraw the deemed admissions midtrial. During discovery, the Clarks requested seven

6

admissions on issues of liability and damages which, if admitted, would have defeated Marin's claims. When Marin failed to respond within 30 days, the requests were deemed admitted. NRCP 36(a)(3). The Clarks then sent a letter to Marin indicating their intention to pursue summary judgment based on the admissions. Ostensibly realizing the misstep, Marin's counsel called the Clarks' counsel. After the call, Marin promptly filed a response to the requests.[1]

After Marin filed her response but prior to trial, the Clarks conceded liability. For the first nine days of trial, the Clarks tenaciously cross-examined Marin's experts on the extent of Marin's injuries and damages without referring to the deemed admissions. After Marin concluded her case-in-chief, the Clarks moved for a directed verdict, arguing that Marin's responses to the requests for admissions were time-barred and thus the requests had been deemed admitted. Marin argued that they had agreed to extend the deadline for her to file a response. In the alternative, Marin moved to withdraw the deemed admissions.[2] The court considered the admissions deemed admitted but found that both requirements for withdrawal under NRCP 36(b) were met. We agree.

---

[1]Despite the indication that they were going to pursue summary judgment, the Clarks never filed such a motion.

[2]The parties dispute whether the requests had in fact been deemed admitted in light of a purported agreement to extend the response deadline. According to Marin, during the call the Clarks granted her an extension to respond to the requests for admission. The Clarks contend that they had not extended the deadline. The district court opted to consider the requests deemed admitted and addressed the parties' arguments on that front. Here, too, we consider the requests deemed admitted as we will not "supply a finding" in the first instance. *Johnston v. DeLay*, 63 Nev. 1, 16, 158 P.2d 547, 554 (1945).

7

The district court may permit a nonresponsive party to withdraw deemed admissions "if it would promote the presentation of the merits of the action and" would not "prejudice the requesting party in maintaining or defending the action on the merits."[3] NRCP 36(b). The United States Court of Appeals for the Ninth Circuit, in construing the federal analog of NRCP 36(b), has found prejudice where the requesting party relied on the admissions as proof of a disputed fact or in preparing their witnesses. *See 999 v. C.I.T. Corp.*, 776 F.2d 866, 869-70 (9th Cir. 1985); *Sonoda v. Cabrera*, 255 F.3d 1035, 1039 (9th Cir. 2001) (indicating "[t]he prejudice contemplated by" NRCP 36(b)'s federal analog "relates to the difficulty a party may face in proving its case, for example by the unavailability of key witnesses" due to reliance on the admissions); *see also Willard v. Berry-Hinckley Indus.*, 139 Nev. 516, 523, 539 P.3d 250, 257 (2023) (deeming federal cases interpreting and applying federal analogs of the Nevada Rules of Civil Procedure persuasive authority). Although we review an order denying a motion for a directed verdict de novo, *Nelson v. Heer*, 123 Nev. 217, 223, 163 P.3d 420, 425 (2007), we review a district court's decision to allow a party to withdraw admissions for abuse of discretion, *Auto Fair, Inc. v. Spiegelman*, 92 Nev. 656, 657, 557 P.2d 273, 274 (1976).

Here, even though the deemed admissions defeated every element of Marin's claims, the Clarks nevertheless conceded liability and proceeded to trial on damages. Then, rather than using the admissions to prove facts at trial or confront Marin's experts, the Clarks waited until the

---

[3]The Clarks urge us to consider other factors in addition to the two laid out in NRCP 36(b). We decline to expand Rule 36's language to require consideration of any factors beyond those explicitly identified by the rule.

8

end of Marin's case-in-chief to move for a directed verdict based on the admissions. This conduct, coupled with the Clarks' preparation of experts to prove the matters covered by the admissions, demonstrates that the Clarks did not rely on the admissions and therefore their defense was not prejudiced by the withdrawal. For that, and because withdrawing the admissions promoted the resolution of the case on the merits, we conclude that the district court did not abuse its discretion in permitting the withdrawal.[4] As the foundation for the Clarks' motion for a directed verdict collapsed without the deemed admissions, we further conclude that the district court did not err in denying the Clarks' motion for a directed verdict.

*The district court did not abuse its discretion in issuing Jury Instruction No. 32*

The Clarks argue that the district court erred in giving Instruction No. 32 over their objection because it was not supported by the evidence.[5] We disagree.

Jury Instruction No. 32 read as follows:

> You are instructed that the defendants are liable for additional harm, resulting from the care and treatment of the injuries plaintiff sustained in the accident by doctors and hospitals, even if the care and treatment by the doctors and hospitals

---

[4]We decline to consider the Clarks' argument for a more restrictive standard in evaluating withdrawals of admissions midtrial as it would not change the result in this instance. *See W. Sunset 2050 Tr. v. Nationstar Mortg., LLC*, 134 Nev. 352, 355 n.3, 420 P.3d 1032, 1036 n.3 (2018) ("We decline to consider this argument because resolving it will not affect the outcome of this case.").

[5]The Clarks also argue on appeal that the jury instruction was an inaccurate statement of the law. Because they did not advance this argument before the district court, we deem it forfeited. *Old Aztec Mine, Inc. v. Brown*, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981).

was performed negligently or incompetently. Furthermore, even if plaintiff's doctors' opinions or recommendations were/are incorrect, defendants are still responsible for paying for any such damages so long as defendants [sic] negligence was the proximate cause of the initial injuries that led to that medical treatment, because subsequent medical treatment is a foreseeable consequence of defendants' negligence.

When a party objects to a jury instruction below and the district court nonetheless gives it, we review that decision for abuse of discretion. *Skender v. Brunsonbuilt Constr. & Dev. Co.*, 122 Nev. 1430, 1435, 148 P.3d 710, 714 (2006). "An abuse of discretion occurs if the district court's decision is arbitrary or capricious or if it exceeds the bounds of law or reason." *Id.* (quoting *Jackson v. State*, 117 Nev. 116, 120, 17 P.3d 998, 1000 (2001)). "A party is entitled to have the jury instructed on all of his theories of the case that are supported by the evidence." *Beattie v. Thomas*, 99 Nev. 579, 583, 668 P.2d 268, 271 (1983).

Pointing to the language "additional harm," the Clarks assert the evidence did not support the instruction because no expert "established to a reasonable degree of medical probability" that the surgeries aggravated Marin's CRPS. But Marin's experts opined that her CRPS was aggravated by the diagnostic surgeries, thereby causing additional harm. Under *Beattie*, this evidence entitled Marin to have the jury instructed on the law regarding her theory that the Clarks were liable for the aggravation of her CRPS because it was caused by surgeries treating the injuries Marin sustained as a result of the Clarks' negligence. Marin was not required to provide evidence establishing the existence and causation of additional harm to a reasonable degree of medical certainty to warrant the instruction.

10

Therefore, we conclude that the district court did not abuse its discretion in giving Instruction No. 32 on the evidence provided.

With that, the last of the Clarks' trial challenges fail.[6] Accordingly, we affirm the judgment.

*The district court did not abuse its discretion in denying the Clarks' motion for a new trial on the basis of attorney misconduct*

The Clarks argue that the district court erred in denying their motion for a new trial due to misconduct by Marin's counsel during trial.[7] According to the Clarks, because counsel taunted post-trial that Marin "got $2 Million for a scratch on the hand," counsel must have presented false evidence of injury at trial in violation of Nevada Rule of Professional Conduct 3.3.[8]

We review an order denying a motion for a new trial for abuse of discretion. *Lioce v. Cohen*, 124 Nev. 1, 20, 174 P.3d 970, 982 (2008). When a motion for a new trial is based on attorney misconduct, the threshold question is whether there was, in fact, misconduct. *Michaels v. Pentair*

---

[6]The Clarks argue that cumulative error warrants reversal. Even if the cumulative-error doctrine applied to civil cases, there is no error to cumulate. *See Nelson*, 123 Nev. at 227 n.28, 163 P.3d at 427 n.28 (declining to reach the issue of whether the cumulative-error doctrine applies in civil cases because the "alleged errors in the context of the trial are without merit").

[7]The Clarks moved for a new trial on three additional bases we have already addressed—insufficient time for trial, withdrawal of the admissions, and Instruction No. 32. On appeal, they challenge the court's order denying a new trial only with respect to the alleged misconduct.

[8]Marin's counsel disputes the Clarks' recitation of the conversation. Because the comments at issue are those of Marin's counsel to the jury during trial and not those to the Clarks' counsel post-trial, the content of counsel's post-trial conversation is irrelevant.

11

*Water Pool & Spa, Inc.*, 131 Nev. 804, 815, 357 P.3d 387, 395 (2015). Whether attorney misconduct occurred is a question of law we review de novo. *Cox v. Copperfield*, 138 Nev. 235, 246, 507 P.3d 1216, 1227 (2022).

The record belies the Clarks' accusation. Marin presented medical records and called 14 witnesses to testify, 8 of which were experts, to establish the nature and extent, causation, and treatment of Marin's injuries. Because there is no evidence of misconduct, we conclude that the district court did not abuse its discretion in denying the Clarks' motion for a new trial on that basis.

*The district court did not abuse its discretion in awarding expert fees exceeding the statutory cap*

The Clarks argue that the district court erred in awarding expert fees exceeding the statutory cap under NRS 18.005(5) without providing a sufficient explanation of its analysis to satisfy *Frazier v. Drake*, 131 Nev. 632, 357 P.3d 365 (Ct. App. 2015). We disagree.

We review an award of expert fees in excess of the statutory presumptive cap for abuse of discretion. *Nevins v. Martyn*, 140 Nev., Adv. Op. 66, 557 P.3d 965, 977 (2024). Under the version of NRS 18.005(5) applicable in this case, courts were permitted to award a prevailing party "[r]easonable fees of not more than five expert witnesses in an amount of not more than $1,500 for each witness, unless the court allows a larger fee after determining that the circumstances surrounding the expert's testimony were of such necessity as to require the larger fee." 2007 Nev. Stat., ch. 440, § 7(5), at 2191.[9] The court of appeals provided a

---

[9]NRS 18.005(5) was amended in 2023, increasing the fee per expert from $1,500 to $15,000. A.B. 76, 82d Leg. (Nev. 2023); 2023 Nev. Stat., ch. 70, § 1, at 342. The district court entered final judgment in this case six

12

nonexhaustive list of 12 factors for district courts to consider in determining whether to award larger fees. *Frazier*, 131 Nev. at 650-51, 357 P.3d at 377-78. Those factors include "the importance of the expert's testimony," the redundancy of the expert's reports or testimony compared to that of the other experts, the nature of the work and time spent on the case, and the expert's qualifications. *Id.* District courts need only consider those factors that are relevant to the case at hand. *Nevins*, 140 Nev., Adv. Op. 66, 557 P.3d at 978.

An award in excess of the presumptive cap must be supported by "particularized reasoning." *Id.*; *see also Frazier*, 131 Nev. at 650, 357 P.3d at 377 (indicating awards "must be supported by an express, careful, and preferably written explanation of the court's analysis of [the pertinent] factors"). This requirement is satisfied if the court "set[s] forth the basis for its decision and address[es] why the circumstances surrounding the expert's testimony necessitated the larger fee." *Frazier*, 131 Nev. at 652, 357 P.3d at 378; *see Motor Coach Indus., Inc. v. Khiabani ex rel. Rigaud*, 137 Nev. 416, 428, 493 P.3d 1007, 1017 (2021) (affirming an award exceeding the statutory cap where the order cited the *Frazier* factors and fee documentation and the experts' testimony was of "obvious importance" to the case).

Marin submitted fee information for ten experts, eight of whom testified at trial. That information included the experts' roles in the trial, the reports they authored, the time they spent preparing and testifying, and their qualifications. The district court awarded fees for five of those testifying experts in the full amount Marin requested. Each of those

---

months before the amendment went into effect. Neither party argues that the amendment applies here.

individual awards exceeded the $1,500 statutory presumptive cap under former NRS 18.005(5). The award totaled $118,875, exceeding the cap by $111,375. In its order, the district court explained that "[a]fter the Court's inquiry regarding the differences in opinions proffered between [Marin's] two pain management physician witnesses . . . and its *Frazier* analysis, the Court found [ ] Plaintiff's requested costs to be reasonable, necessary and actually incurred."[10] At oral argument, the district court briefly addressed Marin's fee requests for each of the five witnesses, indicating it deemed the fees necessary based on the information Marin had provided, stressing the experts' roles and their importance at trial.

The court's consideration of Marin's fee information, coupled with its analysis and explanation during the hearing and in its order, demonstrates that the court adequately considered the relevant *Frazier* factors. We therefore conclude that the district court did not abuse its discretion in awarding expert fees above the statutory presumptive cap and affirm the expert fee award.

*The district court abused its discretion in awarding excessive attorney fees*

The Clarks contend that the district court erred in awarding Marin $818,047.02 in attorney fees under NRCP 68. First, they argue the court abused its discretion in determining that an attorney fee award was

---

[10]The Clarks also challenge one expert's $15,000 trial testimony fee for lack of evidence proving the cost was actually incurred. *See Frazier*, 131 Nev. at 650, 357 P.3d at 377 ("[T]o be recoverable, any requested costs must have been actually incurred."). The combination of Marin's disbursement of costs, the expert's retainer fee schedule, and the trial transcript is sufficient proof that the testimony fee was actually incurred.

14

warranted at all.[11]  Second, they argue that the amount of the award was unreasonable given the work Marin's counsel actually performed post-offer. Because the award covered the full contingency fee, the Clarks argue it necessarily covered work Marin's counsel had completed before the offer, in violation of NRCP 68.  The Clarks invoke this reasoning broadly to argue that *Capriati Construction Corp. v. Yahyavi*, 137 Nev. 675, 498 P.3d 226 (2021), should be overruled because it permits district courts to rubber-stamp excessive contingency-fee-based attorney fee awards without isolating and excluding the work done pre-offer.  We address each of the Clarks' arguments in turn.

Although we generally review a district court's award of attorney fees for manifest abuse of discretion, we review de novo a fee issue that involves a legal question.  *Thomas v. City of North Las Vegas*, 122 Nev. 82, 90, 127 P.3d 1057, 1063 (2006).  Under NRCP 68, either party to a lawsuit can make an offer of judgment documenting how much the defendant is willing to pay, or the plaintiff is willing to accept, to settle the case.  "If the offeree rejects an offer and fails to" secure a judgment more favorable than the offer, then that "offeree must pay the offeror's post-offer costs and expenses, including . . . reasonable attorney fees, if any be

---

[11]The Clarks also argue that the district court erred in failing to provide its "express findings" on the *Beattie* factors in its order granting attorney fees.  Because "express findings on each factor are not necessary," *Logan v. Abe*, 131 Nev. 260, 266, 350 P.3d 1139, 1143 (2015), the award does not fail for this reason.  "The district court need only demonstrate that it considered the required factors," *id.* (citation modified), and the record shows that the lower court did so here.

allowed, actually incurred by the offeror from the time of the offer." NRCP 68(f)(1)(B); *see also* NRS 17.117(10)(b).[12]

In determining whether to award attorney fees under NRCP 68 and in what amount, Nevada courts are instructed to consider the four factors outlined in *Beattie*: (1) whether the plaintiff's claim or defendant's defense was litigated in good faith, (2) whether the "offer of judgment was reasonable and in good faith in both its timing and amount," (3) whether the "decision to reject the offer and proceed to trial was grossly unreasonable or in bad faith," and (4) whether the attorney "fees sought by the offeror are reasonable and justified in amount." 99 Nev. at 588-89, 668 P.2d at 274; *see also Yamaha Motor Co., U.S.A. v. Arnoult*, 114 Nev. 233, 252, 955 P.2d 661, 673 (1998) (clarifying the first factor when a plaintiff makes the offer). The fourth *Beattie* factor is further analyzed under four subfactors set out in *Brunzell v. Golden Gate National Bank*:

> (1) *the qualities of the advocate*: his ability, his training, education, experience, professional standing and skill; (2) *the character of the work to be done*: its difficulty, its intricacy, its importance, time and skill required, the responsibility imposed and the prominence and character of the parties where they affect the importance of the litigation; (3) *the work actually performed by the lawyer*: the skill, time and attention given to the work; (4) *the result*: whether the attorney was successful and what benefits were derived.

85 Nev. 345, 349, 455 P.2d 31, 33 (1969) (citation modified).

We start with the district court's conclusion that an attorney fee award was warranted under the *Beattie* factors. Because the fourth factor bleeds into our evaluation of *Capriati* and the reasonableness of the

---

[12]NRCP 68 is codified at NRS 17.117.

amount, we begin our discussion with the first three factors to determine whether the award was justified.

*The district court did not abuse its discretion in determining an attorney fee award was warranted*

In reviewing an attorney fee award, we defer to the district court's findings of fact and weighing of the factors when supported by substantial evidence. *Wynn v. Smith*, 117 Nev. 6, 13, 16 P.3d 424, 428-29 (2001); *Logan v. Abe*, 131 Nev. 260, 266, 350 P.3d 1139, 1143 (2015). Reviewing the record, we conclude that the district court's weighing of the first three *Beattie* factors in Marin's favor is supported by substantial evidence.

First, the Clarks' actions in requesting admissions to defeat Marin's claims, then proceeding to trial and conceding liability, only to move for a directed verdict on those admissions after nine days of trial supports the court's finding that the Clarks litigated their defense in bad faith. Second, the offer was served "more than 21 days before trial," satisfying NRCP 68(a) and NRS 17.117(1). As for reasonableness, "there is no bright-line rule," *Certified Fire Prot. Inc. v. Precision Constr., Inc.*, 128 Nev. 371, 383, 283 P.3d 250, 258 (2012), though "the damages at issue" serve as a meaningful guide, *Nevins*, 140 Nev., Adv. Op. 66, 557 P.3d at 976. Before serving the offer of judgment, Marin produced records estimating damages in excess of the $2 million offer amount. Considering the Clarks' conceded liability and the proof of the damages at issue, we find substantial evidence supports the district court's determination that the offer was reasonable and in good faith in both timing and amount.

Third, with respect to the reasonableness of an offeree's rejection of an offer, we consider the information available at the time of the offer. *Trs. of Carpenters for S. Nev. Health & Welfare Tr. v. Better Bldg. Co.*,

101 Nev. 742, 746, 710 P.2d 1379, 1382 (1985). Here, at the time Marin served the offer, the Clarks had sufficient information to evaluate the claims and evidence, including damages calculations, Marin's medical records, and Marin's experts' opinions. In light of this information proving Marin's injuries and treatments, and again acknowledging that the Clarks conceded liability, we conclude substantial evidence supports the district court's determination that the Clarks were grossly unreasonable in rejecting Marin's $2 million offer.

With the first three *Beattie* factors satisfied, we are unpersuaded that the district court abused its discretion in generally determining that an attorney fee award was warranted. However, that does not conclude the inquiry. We turn now to the fourth *Beattie* factor: whether the attorney fees sought by the offeror are reasonable and justified in amount.

*The full contingency amount was an excessive award*

The Clarks argue that the district court abused its discretion in finding that the character of the work and the work actually performed—the second and third factors under *Brunzell*—justified an $818,047.02 attorney fee award. We discharge the second-factor challenge quickly. Although the Clarks assert on appeal that the work "was relatively straightforward" and did not involve "highly specialized" skills, they conceded at trial that the case was "complex" and required extensive expert testimony. Marin's counsel represented her through a 13-day trial. A significant amount of money was at stake, and the issue of damages presented difficult questions related to medical proof of injuries and costs of treatment. Our review of the record supports the district court's finding that the complex nature of the case weighed in Marin's favor.

18

We are not as persuaded with respect to the third subfactor: the work actually performed by the lawyer. NRCP 68, by its terms, authorizes reasonable attorney fees "actually incurred by the offeror from the time of the offer." Marin moved for an award in the full amount of her contingency fee agreement under *Capriati*, which authorized district courts to "award the entire contingency fee as post-offer attorney fees under NRCP 68." 137 Nev. at 680, 498 P.3d at 231. Given Marin's reliance on *Capriati*, we take issue not with her argument but with *Capriati* itself.

*Capriati* reasoned that a "contingency fee does not vest until the client prevails." 137 Nev. at 680, 498 P.3d at 231. And since NRCP 68 provides for attorney fees incurred post-offer, it thus contemplates an award in the amount of the entire contingency fee. *Id.* But this conception conflates vesting with incurrence. "A party incurs an expense at the time the expense is paid or the party becomes legally obligated to pay it." *Logan*, 131 Nev. at 262, 350 P.3d at 1140 (citation modified). A plaintiff becomes legally obligated to pay their attorney for legal services upon signing a contingency fee agreement, even though no money becomes due unless and until the client prevails. *See* NRS 18.010(1) ("The compensation of an attorney and counselor for his or her services is governed by agreement . . . ."); *Prostack v. Songailo*, 97 Nev. 38, 40, 623 P.2d 978, 979 (1981) (acknowledging that the agreement for representation created an obligation to pay fees when they became due). As the attorney performs work, they become entitled to compensation for that work, even if the collection of fees is contingent on a favorable verdict.[13] *Ga. Dep't of Corr. v.*

---

[13]This is why attorneys working on a contingency fee basis are entitled to recover a reasonable amount in quantum meruit for services rendered if they are discharged before judgment. *See Gordon v. Stewart*, 74

19

*Couch*, 759 S.E.2d 804, 817 (Ga. 2014). Thus, although an attorney's right to collect fees does not vest until prevailing, fees are incurred as work is performed. On this premise, it is clear that NRCP 68 instructs courts to account only for work performed post-offer in determining a reasonable award amount.

Although *Capriati* noted that NRCP 68 awards "must still satisfy the *Beattie* and *Brunzell* factors," 137 Nev. at 680, 498 P.3d at 232, its conclusion that contingency fees are incurred post-offer created a presumption that the full amount is justified so long as it is reasonable given the type of case, quality of representation, and outcome. Indeed, *Capriati* affirmed a $2.3 million award—the full 40% contingency fee on a $5.9 million verdict—for 9 months of post-offer work without recognizing and excluding the value of the work done in the 4 years before the offer. *Id.* at 676, 679, 681, 498 P.3d at 229, 230, 232. Despite acknowledging that NRCP 68 attorney fees "must be 'limited to those fees earned post-offer,'" *id.* at 680, 498 P.3d at 231 (quoting *O'Connell v. Wynn Las Vegas, LLC*, 134 Nev. 550, 562, 429 P.3d 664, 673 (Ct. App. 2018)), *Capriati* approved full contingency fee awards without imposing a limitation to consider only work performed post-offer. Nor did it provide guidance as to when, or even if, awards in an amount less than the full contingency fee are appropriate or how to apportion such a fee. As a result, district courts tend to rubber-stamp the entire contingency fee amount. Such excessive awards impose a penalty greater than that contemplated by NRCP 68 by compensating the offeror for all of the work done from the inception of the case. *See* NRCP

Nev. 115, 116, 119, 324 P.2d 234, 235, 236 (1958), *overruled on other grounds by Argentena Consol. Min. Co. v. Jolley Urga Wirth Woodbury & Standish*, 125 Nev. 527, 216 P.3d 779 (2009).

20

68(f)(1)(B) ("If the offeror's attorney is collecting a contingent fee, the amount of any attorney fees awarded to the party for whom the offer is made must be deducted from that contingent fee."); *see also* NRS 17.117(10)(b).

Additionally, in conflating vesting with incurrence, *Capriati* impacts the availability of prejudgment attorney fees under other rules and statutes that use the term "incur." For example, when a litigant fails to produce disclosures or discovery, the opposing party may move to compel production and the court may award "reasonable expenses incurred in making the motion, including attorney fees." NRCP 37(a)(5)(A). Similarly, when the court denies a special motion to dismiss in an anti-SLAPP case and finds it was frivolous or vexatious, the responding party is entitled to "reasonable costs and attorney's fees incurred in responding to the motion." NRS 41.670(2). And a party who successfully moves for sanctions under NRCP 11 is entitled to an award of "the reasonable expenses, including attorney fees, incurred for presenting or opposing the motion." NRCP 11(c)(2). Under *Capriati*'s conclusion that contingency fees are incurred only upon a favorable judgment, attorneys working on a contingency fee would have no basis to claim attorney fees during the course of litigation under NRCP 37, NRS 41.670, or NRCP 11. This results in absurd outcomes that were not considered by the court in *Capriati*.

Although we generally follow our prior decisions under the doctrine of stare decisis, we will depart from that doctrine when there are "compelling reasons to do so." *A Cab, LLC v. Murray*, 137 Nev. 805, 810, 501 P.3d 961, 969 (2021). "Compelling reasons include badly reasoned or unworkable decisions," *id.* (citation modified), or "to avoid the perpetuation of error," *Stocks v. Stocks*, 64 Nev. 431, 438, 183 P.2d 617, 620 (1947) (citation modified). In determining whether to adhere to faulty precedent,

21

we also consider the "legitimate reliance interest[s]" at risk of being affected. *Murray*, 137 Nev. at 811, 501 P.3d at 970 (citation modified). For the reasons explained above, and because the recency of the *Capriati* standard weakens the reliance interest that stare decisis protects, we conclude that compelling reasons support overruling *Capriati* to the extent that it holds contingency fees are incurred at the time of judgment. Accordingly, we take this opportunity to recenter our jurisprudence on the intent of NRCP 68.

The purpose of awarding costs under NRCP 68 is to incentivize parties to settle. By requiring an offeree who unreasonably rejects an offer of judgment to pay the offeror's attorney fees that were incurred as a result of that rejection, NRCP 68 serves as a penalty, and thus a disincentive, for rejecting reasonable offers. *Dillard Dep't Stores, Inc. v. Beckwith*, 115 Nev. 372, 382, 989 P.2d 882, 888 (1999). The purpose "is not to force [litigants] unfairly to forego legitimate claims." *Beattie*, 99 Nev. at 588, 668 P.2d at 274. Excessive awards, like those covering the entirety of a contingency fee agreement, risk such an effect. To strike the balance, NRCP 68 must hold offerees responsible for the value of the work required in continuing to litigate the case instead of settling, and no more.

This notion is reflected in the practice of other jurisdictions. Of the eight other states that permit attorney fee awards under their NRCP 68 analogs, only four allow courts to consider contingency fee agreements in determining the award amount. *Cooper v. Thompson*, 353 P.3d 782, 798-99 (Alaska 2015); *Couch*, 759 S.E.2d at 816 (Georgia); *Pirgu v. United Servs. Auto. Ass'n*, 884 N.W.2d 257, 262-63 (Mich. 2016); *Hansen v. Rite Aid Corp.*, 290 A.3d 159, 174 (N.J. 2023) (discussing attorney fee awards under fee-shifting statutes generally). None allow an award in the full contingency

22

amount. Georgia courts may reference what the attorney would have earned under the contingency fee agreement in valuing the post-offer work performed, prorating the contingency fee amount to account only for post-offer work, although they require independent proof of the value of counsel's post-offer services. *Couch*, 759 S.E.2d at 816. Alaska courts calculate an appropriate fee via the lodestar method—multiplying the hours worked by a reasonable billing rate—but have discretion to adjust the reasonable hourly rate upward for contingency fee cases. *Cooper*, 353 P.3d at 798-99. Similarly, Michigan and New Jersey courts start with the lodestar method and make upward adjustments to the overall sum to reflect the risk of taking cases on contingency. *Pirgu*, 884 N.W.2d at 264; *Hansen*, 290 A.3d at 174 (referring to guidelines indicating that "contingency enhancements in fee-shifting cases ordinarily should range between five and fifty-percent of the lodestar fee").

While these jurisdictions delineate the specific approach to calculating NRCP 68-type attorney fee awards, Nevada courts have discretion to use "any method rationally designed to calculate a reasonable amount, including those based on a 'lodestar' amount or a contingency fee." *Shuette v. Beazer Homes Holdings Corp.*, 121 Nev. 837, 864, 124 P.3d 530, 549 (2005). Until *Capriati*, courts awarding attorney fees under NRCP 68 for contingency cases looked to *O'Connell*. There, the court of appeals held that district courts may base NRCP 68 awards on contingency fee agreements without requiring billing records. 134 Nev. at 558, 562-63, 429 P.3d at 671, 673-74. But the court explicitly noted that a plaintiff's "claim for attorney fees is limited to those fees earned post-offer." *Id.* at 562, 429

P.3d at 673.[14]   This limitation directly reflects the language of NRCP 68, NRS 17.117, and the third *Brunzell* factor, making offerees responsible only for those fees accumulated by the attorney for post-offer work.  Accordingly, the court instructed the district court on remand to "consider the proposed amount of the attorney fees award based on the judgment and the contingency fee agreement and evaluate the requested award based on the work performed [post-offer]."  *Id.* at 563, 429 P.3d at 674.  By approving an award of the entire contingency fee amount on the grounds that contingency fees are necessarily incurred post-offer, *Capriati* instituted a significant departure from this framework.

Recognizing that contingency fees, like any other fees, are incurred as work is performed, we now make clear that while courts can consider the contingency fee amount in awarding attorney fees under NRCP 68, the award must be proportionate to and directly reflective of the work performed from the time of the offer.  The court should determine a starting amount and make adjustments to account only for the work completed post-offer.  As we held in *Shuette*, there is no specific approach required.  121 Nev. at 864, 124 P.3d at 549.  Borrowing from the approaches of Alaska, Michigan, and New Jersey, courts may begin with the lodestar method and adjust the reasonable hourly rate or the calculated total upwards to account for contingency risk; or, like Georgia, prorate the contingency amount according to the hours of work done after the offer.  In any case, attorney fee awards under NRCP 68 must exclude the value of work performed before

---

[14]Notably, the plaintiff in *O'Connell* conceded that the NRCP 68 award was limited to fees earned post-offer.  134 Nev. at 562 n.8, 429 P.3d at 673 n.8.

the offer, thereby restricting the award amount to the value of post-offer work.

In this case, the court awarded $818,047.02 in attorney fees, the entirety of the 40% contingency agreement. Yet the offer was served 24 days before trial, 4 years into litigation. Even crediting Marin's counsel's estimates of "hundreds of hours" of post-offer work, the award greatly exceeds the amount permitted by NRCP 68, NRS 17.117, and the *Beattie* and *Brunzell* reasonableness framework. Accordingly, we conclude that the district court abused its discretion in awarding $818,047.02 in attorney fees under NRCP 68. We therefore reverse the district court's order granting Marin's motion for attorney fees and remand for further proceedings consistent with this opinion.

*The district court did not err in assigning the Clarks' claims against their insurance companies to Marin in execution of the judgment*

Finally, the Clarks argue that the district court erred in judicially "assigning any and all of" their contract and tort claims against their insurer to Marin under NRS 21.320 because their claims were not ripe and thus were unassignable. Because the Clarks would not have any claims against their insurer if the judgment against them was reversed on appeal, the Clarks allege their claims could not be assigned unless and until the judgment was affirmed. Marin, on the other hand, asserts that the ripeness of a claim is irrelevant to its assignability.

*We properly exercise jurisdiction to consider this issue*

As a preliminary matter, Marin argues that we lack jurisdiction to resolve this issue because the district court's order granting assignment of the Clarks' claims is not appealable. We previously issued an order to show cause in this case why the appeal should not be dismissed with respect to the assignment order. The parties briefed the issue, and we determined

that we could properly exercise jurisdiction, though we reserved the right to reconsider jurisdictional issues. *See Clark v. Marin*, Docket No. 86592 (Order Reinstating Briefing, July 24, 2024). In her answering brief on appeal, Marin again raises a lack of jurisdiction.

A post-judgment order is appealable as "a special order entered after final judgment," NRAP 3A(b)(8), if it "affect[s] rights incorporated in the judgment" and "grow[s] out of the judgment previously entered," *Gumm v. Mainor*, 118 Nev. 912, 914, 59 P.3d 1220, 1221 (2002). Assignment orders such as the one in this case are appealable because the Clarks' right to sue their insurers arises from the judgment, and the district court's assignment order substantially affects those rights by transferring them from the Clarks to Marin. Therefore, we properly exercise jurisdiction in addressing this issue.

*A judgment debtor's claims against an insurer are assignable upon entry of the final judgment*

Under NRS 21.320, the district court "may order any property of the judgment debtor not exempt from execution, in the hands of such debtor or any other person, or due to the judgment debtor, to be applied toward the satisfaction of the judgment." "[R]ights of action held by a judgment debtor" are property rights assignable "to a judgment creditor in execution of a judgment." *Gallegos v. Malco Enters. of Nev., Inc.*, 127 Nev. 579, 582-83, 255 P.3d 1287, 1289 (2011). The question is whether a judgment debtor's right of action is assignable only once the underlying judgment has been affirmed on appeal. As a question of law and statutory interpretation, we review this issue de novo. *Cardenas-Garcia v. Eighth Jud. Dist. Ct.*, 140 Nev., Adv. Op. 52, 554 P.3d 231, 234 (2024).

According to the plain language of NRS 21.320 and our holding in *Gallegos*, a judgment debtor's claims are assignable once "in the hands of

26

such debtor." The Clarks' claims against their insurer were considered in their hands upon entry of the final judgment. *See State ex rel. Howell v. Wildes*, 34 Nev. 94, 118, 116 P. 595, 597 (1911) ("After adjudication the fruits of the judgment become rights of property." (citation modified)). That is, the Clarks' claims against their insurer arose from the district court entering the judgment against them. From that moment, the Clarks could sue their insurer on those claims. Accordingly, those claims were assignable to Marin upon entry of the judgment. Although the Clarks could move to stay execution of the judgment during the appellate process under NRCP 62(d), appealing the judgment did not render the claims unassignable.

Accordingly, we conclude that the district court did not err in assigning the Clarks' claims against their insurer to Marin in execution of the judgment. We therefore affirm the district court's post-judgment judicial assignment order.

*CONCLUSION*

Although we discern no error at trial, we reverse the district court's order granting attorney fees. Because the award failed to account only for post-offer work performed, we remand to the district court for reconsideration consistent with this opinion. For the same reason, we overrule *Capriati Construction Corp. v. Yahyavi*, 137 Nev. 675, 498 P.3d 226 (2021), insofar as it held that contingency fees are incurred upon judgment. We now make clear that district courts must exclude the work done before the offer in considering a reasonable attorney fee award under NRCP 68. To do so, courts should determine a starting amount and make adjustments to account only for the work completed post-offer. There is no one specific approach required.

In sum, we affirm the judgment, the order denying the Clarks' motion for a new trial, the order granting expert fees, and the order granting

27

assignment of the Clarks' claims to Marin in execution of the judgment. We reverse and remand the attorney fee award for proceedings consistent with this opinion.

Stiglich, J.

We concur:

Herndon, C.J.

Pickering, J.

Bell, J.

Cadish, J.

Lee, J.

PARRAGUIRRE, J., concurring in part and dissenting in part:

Appellants urge this court to hold that the district court abused its discretion in awarding a full contingency fee award under NRCP 68(f)(1)(B). Reviewing that decision under an abuse-of-discretion standard and applying the rationale of *Capriati Construction Corp. v. Yahyavi*, 137 Nev. 675, 498 P.3d 226 (2021), the district court may have erred in its fee award. Rather than reviewing this decision under the proper standard, however, the majority has taken this opportunity to overturn precedent that is only five years old.

While I join the majority on all other issues, I must respectfully dissent on the decision to overturn *Capriati*. The majority's decision today is problematic for a number of reasons, but two stand out in particular. First, the principles established in *Capriati* have not proven to be unworkable; at most, they may warrant clarification. Second, the majority's decision today shakes the stability of previously decided split decisions of this court.

In *Capriati*, we held that an entire contingency fee may be awarded as post-offer attorney fees, as long as the reasonableness factors under *Beattie v. Thomas*, 99 Nev. 579, 588-89, 668 P.2d 268, 274 (1983), and *Brunzell v. Golden Gate National Bank*, 85 Nev. 345, 349, 455 P.2d 31, 33 (1969), are satisfied. 137 Nev. at 680-81, 498 P.3d at 231-32. As a result, district courts must carefully scrutinize the *Beattie* and *Brunzell* factors in their determination of such awards. *Capriati* was decided using the plain language of NRCP 68, understanding that offers of judgment are intended to facilitate settlement and subsequently punish parties who fail to accept reasonable settlement offers. *See id.* Looking at the plain language of NRCP 68(f)(1)(B), we acknowledged that fees must be "actually incurred by the offeror from the time of the offer," before concluding that an *entire*

contingency fee is "incurred" post-offer and thus *may* be awarded. *Id.* at 680, 498 P.3d at 231 (citation modified). Our rationale was that "the contingency fee does not vest until the client prevails." *Id.* As we noted in *Capriati*, the district court in that case "methodically weighed the *Beattie* and *Brunzell* factors" and, therefore, the district court did not abuse its discretion under those circumstances. *Id.* at 681, 498 P.3d at 232. *Capriati* reflects an understanding that the reasonableness of any NRCP 68 award must include consideration of the timing of the work performed and its value in bringing about the result. *See Beattie*, 99 Nev. at 589, 668 P.2d at 274 (identifying the fourth factor in evaluating a fee award under NRCP 68 as "whether the fees sought by the offeror are reasonable and justified in amount"); *Brunzell*, 85 Nev. at 349, 455 P.2d at 33 (looking at "what benefits were derived" as a factor in evaluating the reasonableness of fees).

In furtherance of such understanding in *Capriati*, we acknowledged that *O'Connell v. Wynn Las Vegas, LLC*, 134 Nev. 550, 562, 429 P.3d 664, 673 (Ct. App. 2018), stated NRCP 68 fees "must be limited to those fees earned post-offer."[1] 137 Nev. at 680, 498 P.3d at 231 (citation modified). *Capriati* extended *O'Connell* to the extent it recognized that a full contingent fee is incurred post-offer and thus *may* be awarded under appropriate circumstances where such an award is proven reasonable and justified under *Beattie* and *Brunzell*. *See id.* at 680, 498 P.3d at 231. Therefore, the prevailing party must still establish the reasonableness of the requested fees, including considering the value of the work done pre- and post-offer in accordance with NRCP 68, *Beattie*, and *Brunzell*. *Id.*

---

[1]Whether the fees were limited to those attributed to work done post-offer was not contested there. *O'Connell*, 134 Nev. at 562 n.8, 429 P.3d at 673 n.8.

2

Admittedly, we could have perhaps crafted more precise language to make such a point. Specifically, I acknowledge that the way the terms *vest* and *incur* were used throughout the opinion had the potential to impact other statutes that allow for recovery of attorney fees. But dispensing with *Capriati* altogether is not the solution. Rather, clarification here could have provided that fees are incurred throughout litigation but do not vest until a client prevails; thus, to the extent a contingency fee fully vests, it *could* be awarded in full as long as proven reasonable. In assessing reasonableness, we would have clarified that fees incurred are limited to those earned post-offer.

That said, few district courts have applied *Capriati* to automatically rubber-stamp a full contingency fee award. But even then, this in and of itself does not make *Capriati* unworkable. It merely demonstrates the need to clarify such precedent. For the majority to dispense with such principles and effectively hold that a full contingency fee award could *never* be awarded is without merit. In effect, the majority rewrites NRCP 68 to provide that the "offeree must pay the offeror's . . . reasonable attorney fees . . . [for work] actually [*performed*] by the offeror from the time of the offer." *See* NRCP 68(f)(1)(B); Majority op. at 15-16. However, the rule contains no such limitation. Its text speaks in terms of fees "actually incurred," not hours *actually performed*, after the offer. The majority merely revisits a fundamental disagreement that was expressed and debated in the *Capriati* dissent by the three members now comprising half of the majority here.

Most troubling about the majority's decision today is the danger that going forward, dissenting members attached to prior, razor-thin majority opinions may be tempted to revisit issues in which they have strongly held—yet unadopted—views that new compositions of this court

3

may become inclined to recognize. Stare decisis is the cornerstone of jurisprudence. It anchors our system in consistency, predictability, and institutional legitimacy. Adhering to precedent reinforces fairness in the application of the law and reduces uncertainty and arbitrary decision-making. For these reasons, "[r]igid adherence to stare decisis is the preferred course of action." *AmTrust N. Am., Inc. v. Vasquez*, 140 Nev., Adv. Op. 61, 555 P.3d 1164, 1167 (2024). We have vehemently reinforced the notion that "we will not overturn [precedent] absent compelling reasons for so doing." *Miller v. Burk*, 124 Nev. 579, 597, 188 P.3d 1112, 1124 (2008). Of those compelling reasons, precedent is overturned when "it is proven unworkable or badly reasoned." *AmTrust*, 140 Nev., Adv. Op. 61, 555 P.3d at 1167 (citation modified). But "[m]ere disagreement" cannot justify overturning a decision. *Miller*, 124 Nev. at 597, 188 P.3d at 1124. The majority fails to showcase compelling reasons for deviating from the fundamental requirements of stare decisis. Rather, the majority chooses to promote a basic and continuing disagreement with the *Capriati* majority. Normalizing this practice of revisiting prior decisions when a new court composition is established is deeply concerning and, in my view, destabilizing.

For these reasons, I must respectfully dissent on the lone issue of overturning *Capriati*.

Parraguirre, J.

4